# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## NO. 20-1058

---

JESSICA RAMSAY,
*Plaintiff-Appellee*

v.

NATIONAL BOARD OF MEDICAL EXAMINERS,
*Defendant-Appellant*

---

PLAINTIFF-APPELLEE'S RESPONSE IN OPPOSITION
TO DEFENDANT-APPELLANT'S MOTION
TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

---

Lawrence D. Berger
REISMAN CAROLLA GRAN & ZUBA LLP
19 Chestnut Street
Haddonfield, NJ 08033
(856) 354-0021

Mary C. Vargas
Michael S. Stein
STEIN & VARGAS LLP
10 G Street NE, Suite 600
Washington, DC 20002
(240) 793-3185

*Attorneys for Plaintiff-Appellee Jessica Ramsay*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS .................................................................... 4

ARGUMENT ....................................................................................... 7

A.    There Is No Harm to NBME from Permitting a Single Student To Take a Single Test with Accommodations While the Case Is on Appeal, and the Extraordinary Remedy of a Stay Is Not Warranted.  The Harm to Plaintiff From Granting a Stay Would Be Immediate and Irreparable ....................... 7

B.    The District Court's Weighing of the Evidence and Credibility Determinations Are Entitled to Deference .................................. 10

C.    The District Court Correctly Found That Ms. Ramsay Is A Qualified Person With A Disability ........................................................................ 11

   1.    The Court Correctly Rejected NBME's Argument That Ms. Ramsay Cannot Need Accommodations Because She Managed To Get Into Medical School Without Accommodations ....................................... 12

   2.    The Court Heard Extensive Live Testimony From All Three Experts, and Found That Plaintiff's Expert Was More Persuasive.................. 14

   3.    The Non-Precedential and Factually Inapposite Cases Cited By NBME Do Not Support The Entry Of A Stay .................................. 16

CONCLUSION.................................................................................... 19

CERTIFICATE OF COMPLIANCE WITH F.R. APP.P. 27(d).......................... 21

ELECTRONIC DOCUMENT CERTIFICATE .................................................. 22

CERTIFICATE OF SERVICE.............................................................. 23

CERTIFICATE OF BAR ADMISSION ............................................... 24

# TABLE OF AUTHORITIES

## Cases

*Anastasio v. Saul,* 2019 U.S. Dist. Lexis 128461 (E.D.Pa. 2019) ............................9

*Bibber v. National Board of Osteopathic Medical Examiners,* 2016 U.S. Dist. Lexis 48181 (E.D.Pa. 2016) ................................................................16

*Black v. NBME,* 281 F.Supp.3d 1247 (M.D.Fla. 2017) ...........................................19

*Collins v. Prudential Inv., & Ret. Servs.,* No. 03-2356 (3d Cir. 2005), 2005 U.S. App. Lexis 148 .........................................................................................18

*Cunningham v. Nordisk,* 119 F.Appx. 97 (3d Cir. 2015) ........................................12

*Doherty v. NBME,* 2019 U.S. App. Lexis 33507 (5th Cir. 2019) .............................7

*Glueck v. Natl. Conference of Bar Examiners,* 2018 U.S. Dist. Lexis 140564 at *16 (W.D.Tex. 2018) ...............................................................................................19

*Gonzales v. National Board of Medical Examiners,* 225 F.3d 620 (6th Cir. 2000) 18

*In Re Revel AC, Inc.,* 802 F.3d 558 (3d Cir. 2015) ....................................................7

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982) ...........10

*Love v. Law School Admissions Council,* 513 F.Supp.2d 206 (E.D.Pa. 2007) .......18

*Matthews v. Pennsylvania Dept. of Corrections,* 2015 U.S. App. Lexis 9057 (3rd Cir. 2015) ........................................................................................................17

*Morriss v. BNSF Ry. Co.,* 817 F.3d 1104 (8th Cir. 2016) .......................................12

*Rawdin v. American Board of Pediatrics,* 985 F.Supp.2d 636 (E.D.Pa. 2013), *aff'd* No. 13-4544 (3d Cir. 2014) ...............................................................................16

*Rothberg v. Law School Admissions Council,* 2004 U.S. App. Lexis 11824 (10th Cir. 2004) ........................................................................................................18

*Southport Teledata, Inc. v. Nova Contract Ctr. Platforms, Inc.,* 2006 U.S. Dist. Lexis 80809 (E.D.Pa. 2006)................................................................11

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471 (1999).............................................18

**<u>Rules</u>**

Fed. R. Civ. P. 52(a)(6).............................................................................10

**<u>Regulations</u>**

28 C.F.R. §36.309(b)(v)............................................................................14

## **Introduction**

Plaintiff-Appellee Jessica Ramsay is a gifted medical student who has learning disabilities and whose progress through medical school has been stalled, now for nearly three years, because defendant, National Board of Medical Examiners ("NBME"), refused to provide basic testing accommodations that Ramsay received throughout medical school and that she needs to take and pass Step 1 of the United States Medical Licensing Examination ("USMLE").[1]

The District Court found that unless Ms. Ramsay can take and pass, by March 2, 2020, the "Step 1" examination which NBME administers, she will be dismissed from medical school.[2]  She is scheduled to take this test next week, *with the accommodations that the District Court has ordered, and which have already been arranged by NBME.*

NBME waited 24 days after the entry of the Injunction, and then filed a motion for stay.  Yet, no one – not NBME and not anyone else – will be harmed by permitting Ms. Ramsay to take the already-scheduled test.  The Motion to Stay would undo the very purpose of the Injunction which was to ensure that Ms.

---

[1] Step 1 must be passed by all students at "allopathic" medical schools, *i.e.* schools granting the M.D. degree.  At Ms. Ramsay's medical school, "Step 1" must be passed before the student can continue to her fourth year.  (Other schools require that "Step 1" be passed before the third year.)

[2] District Court's Order Granting Preliminary Injunction [District Court ECF No. 28] at 1 and 48, also found in NBME's exhibits, ECF 14-2 at 10 and 51.

1

Ramsay can take the test with accommodations by March 2.  If she cannot take the test by that date, she will be irreparably harmed because she will be dismissed from medical school with no opportunity to retake the test at a later time.  As the District Court explained in denying NBME's motion to stay pending the appeal:

> Defendant has *not* made the requisite strong showing that it is likely to succeed on the merits nor has it shown that it will suffer irreparable injury in the absence of a stay or that a stay is in the interest of the public.  Moreover, we believe that the record in this action, as discussed in the Memorandum Decision which is now on appeal, amply supports the finding that the *Plaintiff would suffer substantial harm should a stay be granted*. Indeed, it may even be argued that by now requesting such a stay on appeal of this Court's order entering a preliminary injunction, Defendant is endeavoring to, *de facto*, effectively overturn the injunction and moot the Court's decision.[3]

If Ms. Ramsay takes Step 1 on February 20-21 – next week – and passes, she will be able to resume and complete her medical school education (which harms no one).  The many references in NBME's motion to a deadline of March 11 for reporting scores are misleading. [4]  If Ms. Ramsay completes other requirements, she still will not be able to participate in the National Resident Matching Program

---

[3] District Court Order denying Motion to Stay [District Court ECF No. 35] (emphasis added).

[4] Motion to Stay, ECF 14-1, at 2, 3, 16, 24, 26.

until **2021** – not next week, not next month.[5]  There is no emergency requiring this Court to act precipitously on a procedural motion to undo the District Court's carefully considered 51-page opinion rendered after a three-day hearing in which the parties presented multiple witnesses and documents.

NBME glides over the fact that the District Court heard Ms. Ramsay's evidence, and NBME's evidence, and believed Ms. Ramsay.  The District Court found that Ms. Ramsay was substantially limited by dyslexia and ADHD.  Her proof was based on tests administered by a clinical psychologist, tests that NBME's experts admitted are appropriate tests for consideration of diagnoses of dyslexia and ADHD.  NBME's experts also admitted that the tests were accurately scored by Ms. Ramsay's evaluator.  *See* page 5, *infra*.

Much of NBME's motion is devoted to arguing that Jessica Ramsay did well in school.  Ms. Ramsay is smart and accomplished, but as the District Court found, she is also substantially disabled with respect to reading and attention.  The extended time that Ms. Ramsay sought — and which the District Court found that

---

[5] *See* "Residency Applicant Eligibility," found on the Internet at http://www.nrmp.org/residency-applicant-eligibility/:  "To participate in the Main Residency Match®, an applicant must be able to enter graduate medical education (GME) on July 1 in the year of the Match."  It is undisputed that Ms. Ramsay will not graduate from her current medical school program until 2021, and therefore, she cannot be eligible for the Match until 2021.  Ms. Ramsay cannot enter the 2020 Match, and will not be "competing" with any other medical students until 2021.

Ms. Ramsay needs — is the same accommodation that Ms. Ramsay received in college and medical school. The District Court found, after a three-day hearing, that plaintiff is likely to succeed on her claim, and will suffer irreparable harm unless she is able to take the test, with extended time, by the March 2 deadline.

There is no justification for this Court to overturn findings of facts that the District Court reached after holding three days of hearings, and after hearing the very witnesses on whom NBME now relies: hearing their full testimony, and not the highly misleading snippets which NBME offers up to this Court. NBME's motion to stay should be denied.

## Statement of Facts

Jessica Ramsay has worked hard all her life, and succeeded at many things, as NBME points out, but she is severely disabled with respect to reading speed and attention. She asked for, and received, extended testing time as an accommodation in college, and then medical school, for the simple reason that she is unable to read tests adequately in standard time. Then, she requested the same accommodation for the Step 1 examination.

In her trial testimony, she explained in detail why it is not possible to succeed on the densely worded Step 1 examination without being able to

completely read the questions.[6]  She also testified about the informal

accommodations she received throughout her early education and the

compensatory strategies she used to obtain scores on standardized tests,

compensatory strategies that she testified cannot be applied to Step. 1.[7]

When she was tested by Dr. Robert Smith, a clinical psychologist, using

testing instruments *that NBME's experts admitted are appropriate*,[8] he found that

her oral reading fluency was at the 1st percentile, *i.e.,* better than only 1% of same-

aged individuals, and far below average.  Her Reading Rate Cluster score on

another test – also acknowledged by NBME's experts to be appropriate – was also

at the 1st percentile, and her fluency on yet another found-to-be-appropriate test

was at the 2d percentile.[9]  Therefore, the District Court – based on the testing

---

[6] *See, e.g.* excerpts in NBME's filing (ECF 14-2) from Hearing Transcript
("Tr.") at ECF pages 123-132 (also designated as pages 3-64 through 3-73).
Plaintiff has ordered but not yet received the full Hearing Transcript.  In this
Opposition, we will cite to relevant exhibits or – where available in the excerpts
contained in NBME's filing – to the Transcript.

[7] *See, e.g.* Tr. in NBME's exhibits [ECF 14-2] at 123-126 (also designated by
NBME as 3-64 through 3-67).

[8] *See* Hearing Transcript ("Tr.") in NBME's filing, ECF 14-2 at 368 through
370 (also marked by NBME as 3-309 through 3-312) (Testimony of NBME's
expert Dr. Benjamin Lovett) and Tr. at ECF 14-2 at 418-420 (3-359 through 3-361)
(Testimony of NBME's expert Dr. Steven Zecker).  .

[9] Declaration of Robert Smith, Ph.D., ¶18, District Court ECF 7-4.  *See also* Tr.
at ECF No. 14-2 at 445 to 449 (3-386 through 3-390).

results obtained by Dr. Smith, using test instruments which NBME's paid experts agreed were appropriate – found that Ms. Ramsay has a disability.

Step 1 is a critical test.  Medical students cannot finish medical school without passing Step 1.  When NBME refused to grant Ms. Ramsay extended time for Step 1, and she took the test without extended testing time, she failed, and the District Court found that "she was unable to read all of the questions."  *See* District Court Injunction Order [ECF No. 28] at ¶13, p. 6.[10]

If she does not take and pass Step 1, she cannot simply apply to another school[11] and in fact she is barred from even registering to take Step 1 once she is dismissed or withdrawn from medical school.[12]  If she is permitted to take Step 1 with the Injunction in place –as she is scheduled to do next week – and passes, she can continue in medical school.  No one will be harmed by this.  (*See* pages 3 and n.5, *supra*, concerning NBME's wholly-fabricated theory that other students will be harmed.)  By contrast, if the injunction is stayed and she cannot take the test, she will be dismissed or forced to withdraw with no opportunity to take the test again at a later time.

---

[10] *See also* Declaration of Jessica Ramsay, ¶28 [District Court ECF 7-3].  *See also* Tr. in NBME's exhibits [ECF No. 14-2] at 219 (3-160).

[11] Tr., ECF 14-2, at 133-134 (3-74 and 3-75).

[12] Only students or graduates of medical schools are eligible to take Step 1. *See* https://www.usmle.org/apply/.  If Ms. Ramsay were dismissed or forced to withdraw, she would be neither.

## **Argument**

**A.    There Is No Harm to NBME from Permitting a Single Student To Take a Single Test with Accommodations While the Case Is on Appeal, and the Extraordinary Remedy of a Stay Is Not Warranted.  The Harm to Plaintiff From Granting a Stay Would Be Immediate and Irreparable.**

There is no basis for a stay.  NBME has not demonstrated that it will suffer any harm, much less irreparable harm.  Indeed, the perverse result of granting a stay in this case would be to defeat the very purpose of granting the injunction, which was to ensure that Ms. Ramsay can take the Step 1 examination with the accommodations that she needs, prior to March 2, so that she can continue in medical school.

NBME cites *Doherty v. NBME,* 2019 U.S. App. Lexis 33507 (5th Cir. 2019) which it characterizes as a "directly analogous case."  But the facts in *Doherty* were quite different.  The Fifth Circuit faulted the District Court for relying on tests that did not compare Ms. Doherty with the "general population," *id.* at *5-*7, but that is not true for the tests on which Dr. Smith relied in this case.  All those tests were tests that compared Ms. Ramsay to the general population, and that NBME's own reviewers accepted as appropriate.  *See* p. 5 and n.8, *supra*.

NBME also cites *In Re Revel AC, Inc.,* 802 F.3d 558 (3d Cir. 2015), an otherwise irrelevant case (involving the sale of a casino) for the general statement of the standard for a stay.  Under that standard, NBME's motion should be denied.

First, NBME has made no showing of likelihood that it will succeed on the merits. On the contrary, appellant lost a preliminary injunction hearing before a District Court judge who heard three days of testimony, and who made detailed findings of fact which will easily withstand scrutiny under the "clearly erroneous" standard. Second, NBME has made no showing of any injury at all, to itself or to others, or to the public, much less irreparable injury. No one will be harmed by allowing Jessica Ramsay to take the test with the accommodations that NBME has already arranged. No one will be harmed if Ms. Ramsay is successful and is able to continue in medical school. No one will be harmed by Ms. Ramsay having a so-called unfair advantage in the Resident Match because she cannot even enter the Match until 2021, by which time this Court will have had the benefit of full briefing on the extensive factual record in this case. Finally, there is no "public interest" in preventing Ms. Ramsay from taking the test with accommodations pending this appeal.

If the District Court did not address "harm" to NBME (Motion at 24), it is because NBME proved no harm, and still has proved no harm. The argument that the harm to Ms. Ramsay from granting a stay is "speculative" is truly bizarre. Ms. Ramsay must pass this test to continue in medical school or she will be dismissed without the opportunity to take the test at a later date. That is not speculative. NBME's other arguments are fact-arguments which the District Court

considered on a full record.[13]  Ms. Ramsay has been preparing for more than a month to take this test with the accommodations ordered by the District Court, and is scheduled to do so in one week.  All of NBME's remaining arguments about the request for a stay are arguments about the merits of the case, which this Court should consider on the merits and not prematurely.

In its District Court motion for stay, NBME cited, but now ignores *Anastasio v. Saul,* 2019 U.S. Dist. Lexis 128461 (E.D.Pa. 2019).  That case is instructive.  The Court denied a stay because it found that "defendant has not demonstrated a clear case of hardship or inequity," and that "[b]y contrast, the plaintiff certainly will suffer the hardship of waiting months, perhaps years, for the resolution of the appeal."  *Id.* at *3-*4.  Here, Ramsay is an individual whose medical education has already been delayed for three years and who is at risk of imminent dismissal from medical school if she does not take and pass Step 1 by March 2.  Once dismissed, Ramsay is no longer eligible to take Step 1 at all.  Clearly, she will be greatly harmed as the District Court has determined.

---

[13] Although NBME makes much of the fact that Ms. Ramsay failed the Step 1 test by one point, she failed because she could not read all the questions.  She still cannot read all the questions.  Moreover, in 2021 when she can enter the Match, Ms. Ramsay's total score will be considered by hospitals where she would like to do residencies.  Passing the test by one point is still considered a low score.  Ms. Ramsay does not ask for extended time just to pass the test; rather, extended time is necessary to ensure that the Step 1 examination accurately measures her knowledge rather than her disability.

NBME cites no logistical difficulties with compliance, and there are none. Extended testing time is not a novel or difficult accommodation for NBME to provide, especially in a case like this one where NBME had already scheduled Ms. Ramsay's test for two testing days.  What NBME is actually requesting is for this Court to grant permission to undo what NBME has already done to comply. That is why NBME has failed to show any particularized harm at all:  there is none.

### B.    The District Court's Weighing of the Evidence and Credibility Determinations Are Entitled to Deference

Most of NBME's motion comes down to this:  NBME disagrees with the District Court's findings of fact, including its finding that Ms. Ramsay is a person with a disability who requires extended testing time in order to be able to fairly access the USMLE, and its finding that Dr. Smith's conclusions are more persuasive than those of NBME's experts, Drs. Zecker and Lovett.  However, it is fundamental that the District Court's findings can only be disturbed if they are "clearly erroneous," and "the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."  Fed. R. Civ. P. 52(a)(6).

As the Supreme Court explained in *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844 (1982), where it reversed a Court of Appeals decision that failed to give such deference, Rule 52 "recognizes and rests upon the unique opportunity afforded the trial court judge to evaluate the credibility of

witnesses and to weigh the evidence."  456 U.S. at 855.  *See also Southport Teledata, Inc. v. Nova Contract Ctr. Platforms, Inc.,* 2006 U.S. Dist. Lexis 80809 (E.D.Pa. 2006) at *3 where Judge Pratter stated that "The Court will not disturb its judgment here merely because, not surprisingly, [defendant] would have weighed the evidence differently."

Mere disagreement is not grounds for appellate reversal, and is even less grounds for the extraordinary remedy of a stay.

### C. The District Court Correctly Found That Ms. Ramsay Is A Qualified Person With A Disability.

Most of NBME's Motion is an attack on the District Court's findings that Ms. Ramsay has a disability.  The District Court carefully considered all of the evidence, including all the evidence about Ms. Ramsay's hard work in overcoming her reading and attention disabilities prior to medical school, and found that she was a person with a disability:

> In view of all of the evidence provided by Plaintiff both in the form of the materials and supporting documentation submitted to NBME pursuant to her numerous requests for accommodations and requests for reconsideration of the denials thereof and at the three-day hearing before the undersigned, we find that *Plaintiff has sufficiently established that she is indeed a qualified individual with a disability within the meaning of the ADA* despite her prior academic successes and her performances on standardized tests.

> * * * *

> As a *disabled individual* under the foregoing federal statutes, Plaintiff is entitled to reasonable accommodations in

11

> sitting for examinations given by any person or entity relating to applications, licensing, credentialing, or certification for secondary or post-secondary education, professional or trade purposes.

District Court Opinion [District Court ECF 28] at 47-48, 50 (emphasis added).

Plaintiff never argued, and does not argue, and the District Court never held, that the ADA is not limited to people with disabilities.  The District Court found that plaintiff is a person with a disability and accordingly issued the Injunction based on this well-developed record.[14]

### 1.    The Court Correctly Rejected NBME's Argument That Ms. Ramsay Cannot Need Accommodations Because She Managed To Get Into Medical School Without Accommodations.

The heart of NBME's argument has always been that someone who managed to get into medical school without accommodations on the Medical College Admissions Test ("MCAT"), could not possibly need accommodations for the USMLE.  There is nothing new about this argument.  The District Court heard this same argument, and rejected this factual assertion, concluding that

---

[14] By harping on this, NBME has erected a meaningless straw-man argument to knock down.  *See* Motion at 2, 20, 22.  The cases cited by NBME are likewise irrelevant.  For example, *Morriss v. BNSF Ry. Co.,* 817 F.3d 1104, 1110-12 (8th Cir. 2016) (Motion at 21) is about whether obesity is a disability if not physiologically based.  *Cunningham v. Nordisk,* 119 F.Appx. 97 (3d Cir. 2015) (Motion at 21) is about whether a person who had recovered from a heart attack was disabled.  No one contends that Ms. Ramsay has "recovered" from dyslexia, which is a life-long disability.

Ms. Ramsay did receive informal accommodations throughout elementary school, middle school and high school. District Court Opinion [ECF 28] at 32-34. That NBME disagrees with the District Court's findings is not grounds for a stay.

The District Court also heard and believed Ms. Ramsay's testimony that in college, seeing her struggle with material that she knew well, two instructors suggested that she contact the college disability office, after which she did receive formal accommodations (District Court Opinion [ECF 28] at 34-36). The District Court also found that Ms. Ramsay continued to receive accommodations in medical school (District Court Opinion [ECF 28] at 37-39). Ms. Ramsay testified that she did not know (until it was too late to apply) that she could apply for testing accommodations for the MCAT (District Court Opinion [ECF 28] at 36). Ms. Ramsay also testified at length about the differences between the MCAT and Step 1 examinations, and why the methods that she used to minimize reading on the MCAT were unavailing for Step 1.[15]

As the District Court summarized:

> NBME's exclusive focus on Plaintiff's prior academic successes and her performance on the ACT and MCAT standardized examinations without accommodations was . . . improper, particularly given that we can discern that *no consideration was given to the other evidence produced by Plaintiff*, including her lengthy personal statement.

---

[15] *See* p. 5 and n. 7, *supra*.

. . . [W]e also find that Defendant ran afoul of 28 C.F.R. §36.309(b)(v) which requires that "[w]hen considering requests for . . . accommodations . . . the [testing] entity give[] considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations. . . ."  Again, it does not appear from the record that NBME gave any consideration, much less the "considerable weight" required to Ms. Ramsay's past record of having received accommodations.

In view of all of the evidence provided by Plaintiff both in the form of the materials and supporting documentation submitted to NBME pursuant to her numerous requests for accommodations and requests for reconsideration of the denials thereof and at the three-day hearing before the undersigned, we find that Plaintiff has sufficiently established that she is indeed a qualified individual with a disability within the meaning of the ADA despite her prior academic successes and her performances on standardized tests.

District Court Opinion [ECF 28] at 47-48 (emphasis added and footnote omitted).

**2.    The Court Heard Extensive Live Testimony From All Three Experts, and Found That Plaintiff's Expert Was More Persuasive.**

Another NBME straw man is that the District Court blindly deferred to Ms. Ramsay's expert, Dr. Smith.  *See, e.g,* Motion at 22.  Rather, the District Court heard the testimony of Dr. Smith, and also the testimony of NBME's hired consultants, Drs. Zecker and Lovett, and chose to resolve this "battle of experts"[16] by accepting the detailed and amply supported conclusions of Dr. Smith.  As the District Court noted, neither one of NBME's reviewers, Dr. Zecker and Dr. Lovett,

---

[16] District Court Opinion [ECF 28] at 44.

ever evaluated Ms. Ramsay in person (or even met her, prior to the hearing).

Drs. Lovett and Zecker both acknowledged, in response to questions from

plaintiff's counsel, that the tests administered by Dr. Smith were appropriate tests

for evaluating someone for ADHD and dyslexia, and that they had no reason to

question that Dr. Smith administered and scored the tests correctly.[17]  Rather,

Drs. Lovett and Zecker simply substituted their own conclusions based on the same

information,[18] and the Court decided to accept Dr. Smith's conclusions.

It was reasonable for the District Court to accept Dr. Smith's conclusions.

The District Court heard the witnesses.  Its findings are based on its own

evaluation of the witnesses, and thus are subject to the "clearly erroneous" standard

of Rule 52.  The District Court's findings did not rest solely on the Department of

Justice guidance that "face-to-face evaluations" are entitled to deference, [19] though

that guidance is reasonable, and certainly should not be ignored in the context of a

motion for stay without a full briefing on this issue.

---

[17] *See* p. 5 and n. 8, *supra*.

[18] "[I]n their rejection of the conclusions of those providers who actually did evaluate Plaintiff, Drs. Lovett and Zecker instead undertook to analyze the results of the various tests themselves, substituting their own opinions regarding how those test results should be interpreted."  District Court Opinion [ECF 28] at 45.

[19] U.S. Department of Justice, "Testing Accommodations," found on the Internet at https://www.ada.gov/regs2014/testing_accommodations.html.

### 3.    The Non-Precedential And Factually Inapposite Cases Cited By NBME Do Not Support The Entry Of A Stay.

NBME places considerable emphasis on a 2016 decision by the late Judge Dalzell – *Bibber v. National Board of Osteopathic Medical Examiners,* 2016 U.S. Dist. Lexis 48181 (E.D.Pa. 2016).  Motion at 19, 21, 23.  (The *Bibber* case involved NBME's counterpart for osteopathic medical students, and the "COMLEX" which is the licensing test for osteopathic physicians.)  But NBME ignores Judge Dalzell's finding that Ms. Bibber presented "psychometric data that shows she reads at an *average* level." *Id.* at *21.  The information which the District Court heard about Ms. Ramsay's reading level is quite different from what Judge Dalzell found in the *Bibber* case.  For example, Dr. Smith reported, and testified, that Ms. Ramsay's oral reading fluency, reading rate and reading rate cluster on the Wechsler Individual Achievement Test (WIAT-III) and the Woodcock-Johnson IV Tests of Achievement (WJ-4), both well recognized instruments which both Drs. Zecker and Lovett accepted, were at the 1st percentile, and that her fluency on the Gray Oral Reading Tests (GORT-5), likewise accepted by Drs.  Zecker and Lovett, was at the 2d percentile – profoundly below the general population.  *See* p. 5, *supra*.

NBME also cites *Rawdin v. American Board of Pediatrics,* 985 F.Supp.2d 636 (E.D.Pa. 2013), *aff'd* No. 13-4544 (3d Cir. 2014), but fails to mention that "Dr. Rawdin's scores placed him into the superior range or high average range on

most of the tests" that he was administered.  985 F.Supp.2d at 641.  Although

Ms. Ramsay is very intelligent in many ways, her *reading* scores were not

"superior" or "high average."  Rather, Ms. Ramsay's reading scores were in the

bottom first percentile, establishing that she is substantially limited in the major

life activity of reading.

At page 19 of its Motion, NBME cites *Matthews v. Pennsylvania Dept. of*

*Corrections,* 2015 U.S. App. Lexis 9056 (3rd Cir. 2015)[20] for the proposition that

not every impairment will constitute a disability.  Plaintiff does not claim

otherwise.  But in the case at bar, Dr. Smith found, and the District Court agreed,

that Ms. Ramsay's extremely slow reading speed did constitute a disability.  The

plaintiff in *Matthews* suffered what the Court found to be a transitory "impairment

that was both minor in its restrictions and lasted only a few months," whereas it is

undisputed that ADHD and dyslexia are lifelong disabilities.  While NBME

disputes that Ms. Ramsay actually has these impairments, the District Court found

to the contrary and the District Court's well-considered findings are entitled to

deference on appeal.

---

[20] The opinion in *Matthews* was not precedential, and such opinions are not
binding.  *See* Internal Operating Procedures of the United States Court of Appeals
for the Third Circuit ("IOP"), 5.7, found on the Internet at
https://www2.ca3.uscourts.gov/legacyfiles/IOPs.pdf.

NBME cites many cases that were decided prior to the enactment of the
Americans With Disabilities Act Amendments Act of 2008 ("ADAAA"),
P.L. 110-325,[21] and which rely upon the Supreme Court decision in *Sutton v.
United Air Lines, Inc.,* 527 U.S. 471 (1999) which the ADAAA expressly
overruled.  *See, e.g., Collins v. Prudential Inv., & Ret. Servs.,* No. 03-2356 (3d Cir.
2005), 2005 U.S. App. Lexis 148;[22] *Gonzales v. National Board of Medical
Examiners,* 225 F.3d 620 (6th Cir. 2000),[23] and *Love v. Law School Admissions
Council,* 513 F.Supp.2d 206, 219 (E.D.Pa. 2007).[24]

---

[21] *See* https://www.eeoc.gov/laws/statutes/adaaa.cfm.

[22] *Collins* is also inapposite because the only evidence that plaintiff had ADHD
was from a treating physician who testified only as a fact witness as to his own
diagnosis and treatment, and "not [as] an expert witness."  2005 U.S. App. Lexis at
*21.  Here, plaintiff's expert (Dr. Smith) and NBME's experts (Drs. Lovett and
Zecker) were all accepted by the District Court as experts.

[23] Unlike Ramsay, Gonzales was in the "average to superior range" for reading,
225 F.3d at 628.  The District Court in *Gonzales* refused to grant an injunction, and
the Court of Appeals affirmed.

[24] *Rothberg v. Law School Admissions Council,* 2004 U.S. App. Lexis 11824
(10th Cir. 2004), cited at p. 24 of NBME's Motion, is another non-published and
pre-ADAAA decision.  In *Rothberg,* the student had already taken the test with
accommodations, and the only issue was whether defendant should report the
accommodated result.  Here, NBME seeks to prevent Ramsay from taking the test,
and the reporting issue is a non-issue until at least 2021 which is the earliest date
that Ramsay can enter the Match.  This Court should allow Ms. Ramsay to take the
test now.  Any issue about reporting can be resolved before 2021.  In *Rothberg,*
which as a pre-ADAAA case is irrelevant anyhow, the District Court applied an
erroneous legal standard and failed to require a showing of irreparable harm.  It
then stayed its own Order.

NBME has cherrypicked the case law in citing cases where the plaintiff was *not* an individual with a disability. Since the determination of disability is fact-specific and must be made on the record in each case, whether a different person has a disability is irrelevant to the determination in this case that Ms. Ramsay has a disability. In none of NBME's cited cases, for instance, was the test-taker an individual who scored in the bottom first percentile when it comes to reading speed. The District Court properly found based on extensive witness testimony and documentation that Ms. Ramsay is an individual with a disability and its findings are entitled to deference on appeal.[25]

## **Conclusion**

If Ms. Ramsay cannot take the test by March 2, she will be dismissed from medical school with no opportunity to retake the test. Since the District Court's Order, Ms. Ramsay has spent more than a month preparing to take the Step 1 examination with accommodations, and is scheduled to take the test in one week.

---

[25] For example, in *Glueck v. Natl. Conference of Bar Examiners,* 2018 U.S. Dist. Lexis 140564 at *16 (W.D.Tex. 2018), "[p]laintiff's results . . . never fall below the 'low average' range." In *Black v. NBME,* 281 F.Supp.3d 1247, 1251-1252 (M.D.Fla. 2017), on a belated motion to amend a pleading, the Court concluded that plaintiff's allegations generally reflected average ability. Nothing approached the evidence which the District Court heard in the case at bar. None of these cases that are string-cited by NBME, without discussion, are appeals from a District Court which heard witnesses, and found the substantial limitations that were found here.

Defendant has already directed its test center provider to carry out the District Court's Order.  Since Ms. Ramsay will be irreparably harmed if she cannot take the test by March 2 and NBME will suffer no harm from giving her the extended time that it has already arranged, Ms. Ramsay respectfully requests that the Court deny NBME's motion for a stay.

Respectfully submitted,

/s/    Lawrence D. Berger
Lawrence D. Berger (ID No. 16028)
Larry@rcglawoffices.com
REISMAN CAROLLA GRAN & ZUBA LLP
19 Chestnut Street
Haddonfield, NJ  08033
(856) 354-0021

Mary C. Vargas (ID No. 324005)
Mary.Vargas@SteinVargas.com
Michael S. Stein
Michael.Stein@SteinVargas.com
STEIN & VARGAS LLP
10 G Street NE, Suite 600
Washington, DC  20002
(240) 793-3185

Attorneys for Plaintiff-Appellee Jessica Ramsay

Dated:  February 13, 2020

## **Certificate of Compliance With F.R.App.P. 27(d)**

I hereby certify that this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains no more than 5,200 words excluding the parts exempted by Rule 27(a)(2)(B).  I further certify that this document complies with the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Times New Roman.

/s/     Lawrence D. Berger

## **Electronic Document Certificate**

I hereby certify that this document has been scanned with the most recent version of McAfee Security Scan Plus and is free of viruses.


/s/    Lawrence D. Berger        

## **Certificate of Service**

I hereby certify that a copy of Plaintiff's Response in Opposition to Defendant's Motion for Stay was electronically filed on February 13, 2020, which constitutes service on all of defendant-appellant's counsel, as listed below, all of whom are Filing Users as provided in Local Appellate Rule 113.4.

Alison R. Caditz, Esquire
Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, WA  98101

ACaditz@perkinscoie.com

Robert A. Burgoyne, Esquire
Caroline Mew, Esquire
Perkins Coie LLP
700 Thirteenth Street, N.W. Suite 600
Washington, D.C. 20005-3960

RBurgoyne@perkinscoie.com
CMew@perkinscoie.com

/s/    Lawrence D. Berger
       Lawrence D. Berger

Attorney for Plaintiff-Appellee Jessica Ramsay

February 13, 2020

## **Certificate of Bar Admission**

I hereby certify pursuant to Local Appellate Rule 46.1(d) that I am a member of the bar of this Court.

/s/   Lawrence D. Berger