Appeal No. 20-1058

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

*JESSICA RAMSAY,*

*Plaintiff-Appellee,*

*v.*

*NATIONAL BOARD OF MEDICAL EXAMINERS,*

*Defendant-Appellant.*

**REPLY IN SUPPORT OF DEFENDANT-APPELLANT'S
MOTION TO STAY PRELIMINARY INJUNCTION**

Alison R. Caditz
PERKINS COIE LLP
1201 Third Avenue,
Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000

Robert A. Burgoyne
Caroline Mew
PERKINS COIE LLP
700 Thirteenth Street N.W.,
Suite 600
Washington, DC 20005-3960
Telephone: 202.654.1744

Attorneys for
Defendant-Appellant
NATIONAL BOARD OF
MEDICAL EXAMINERS

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................. i

TABLE OF AUTHORITIES........................................... ii

INTRODUCTION..........................................................1

    I.    Plaintiff does not confront the key legal issue on the merits—whether she is substantially limited compared to most people..........................................................3

    II.   Plaintiff ignores the harm to NBME and others. ...........................................................9

    III.   Any harm to Plaintiff is neither irreparable nor likely......................................................11

CONCLUSION .............................................................14

CERTIFICATE OF COMPLIANCE .............................16

CERTIFICATE OF SERVICE .....................................17

ELECTRONIC DOCUMENT CERTIFICATE.............18

CERTIFICATE OF BAR ADMISSION ........................19

# TABLE OF AUTHORITIES

**CASES**

*Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs,*
  2016 WL 1404157 (E.D. Pa. Apr. 11, 2016) ........................7

*Doherty v. NBME,*
  No. 19-30661 (5th Cir. Sept. 3, 2019)...........................9, 14

*In re Revel AC, Inc.,*
  802 F.3d 558 (3d Cir. 2015) .................................................4

*Love v. Law Sch. Admission Council,*
  513 F. Supp. 2d 206 (E.D. Pa. 2007) ..................................7

*Mann v. La. High Sch. Athletic Ass'n,*
  535 F. App'x 405 (5th Cir. 2013) ........................................4

*Powell v. NBME,*
  364 F.3d 79 (2d Cir. 2004) ................................................10

*Rawdin v. Am. Bd. of Pediatrics,*
  *985 F. Supp. 2d 636 (E.D. Pa. 2013)*..................................7

*Trinity Indus., Inc. v. Chi. Bridge & Iron Co.,*
  735 F.3d 131 (3d Cir. 2013) .................................................2

*Winter v. NRDC,*
  555 U.S. 7 (2008)...........................................................9, 12

**RULES**

28 C.F.R. § 36.105 ........................................................1, 3, 9

**OTHER AUTHORITIES**

Osteopathic Family Physicians,
  *Bernadette Bibber* .............................................................14

## INTRODUCTION

This Court should stay the injunction Plaintiff obtained to get extra time on her medical licensing exam because the injunction is founded upon obvious legal errors that will likely invalidate her result. Plaintiff's schooling, licensing, and residency options should not be set in motion in the meantime, which harms other test-takers and the public. A stay is abundantly appropriate.

Although the district court held a hearing and produced a lengthy opinion, the opinion falters at the first legal stop. It simply does not apply the controlling legal standard for proving a disability—whether Plaintiff is substantially limited compared to most people. 28 C.F.R. § 36.105(d)(1)(v). The court actually found that she outperforms the average person in the general population. Ex.1 at 31-32.

Plaintiff argues she prevailed because the district court found her expert "credible," but the court's treatment of the experts did not reflect a credibility determination but rather a fundamental misapplication of the ADAAA.

In the face of obvious error, Plaintiff mostly argues that "no one" will be harmed if she is (erroneously) allowed to take a medical licensing exam with significantly extra time.

That perverts preliminary injunction standards. Mandatory preliminary injunctions are only appropriate "in the most unusual case," where the "moving party's right to relief [is] indisputably clear." *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013). That Plaintiff personally sees "no harm" in getting extra time is not the standard for a mandatory injunction.

But to be clear, there is potential harm. Plaintiff wishes to set in motion a return to medical school, accommodations on more exams, and higher scores to increase the likelihood she will secure a residency slot at the expense of other US-MLE test-takers. But if Plaintiff is not "disabled" under the law—and she is not—it harms her medical school, other test-takers, residency programs, and the public for her to proceed with invalid scores. Those are the interests NBME seeks to protect, and they are important. A stay is warranted—on the legal merits and because of potential harm.

I. **Plaintiff does not confront the key legal issue on the merits—whether she is substantially limited compared to most people.**

In her 20-page brief, Plaintiff *not once* cites the controlling legal standard, under which a disabled individual must be substantially limited vis-à-vis "most people in the general population." 28 C.F.R. § 36.105(d)(1)(v). Plaintiff does not identify a *single* cite from the district court's "carefully considered 51-page opinion" that would even suggest she is substantially impaired relative to most people. Opp. 3. Nor does Plaintiff address the court's inconvenient contrary finding that she outperforms the average person—a conclusion compelled by a lifetime of excellent grades and test scores earned without any accommodations (including her top 3% ACT score and top 21% MCAT score).[1] Mot. 18-19; *see* Ex.19 (Academic and Testing Histories); Ex.3 at 97-112, 125-36 (Ramsay testimony).

---

[1] Plaintiff attempts to reconcile her ACT and MCAT scores with her stated need for double the testing time afforded non-disabled students by asserting that Step 1 is "densely worded" and requires more reading. Opp. 4, 13. But a glance at all three exams refute these purported distinctions. Step 1 requires the least reading of the three and is no "denser" than the MCAT, which has long passages containing information needed to answer corresponding questions. *See* NBME's Supp. Exs. 1-3; Ex.3 at 146-49, 153-54.

The district court's finding that Plaintiff is "a qualified individual with a disability [under] the ADA" begs the question in the face of its contrary finding that she has performed exceedingly well compared most people without any accommodations. *See* Opp. 11. If a court arrives at that legal conclusion by applying the wrong legal standard, as happened here, its conclusion is erroneous and cannot stand.

Instead of addressing the district court's legal errors— and in an effort to insulate them from scrutiny—Plaintiff mischaracterizes the court's disability determination and underlying legal analysis as a factual finding subject to clear error review. Opp. 8. That is incorrect. This Court reviews the lower court's disability determination *de novo. Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 410 (5th Cir. 2013); *see also In re Revel AC, Inc.*, 802 F.3d 558, 567 (3d Cir. 2015) ("[W]e review *de novo* the District Court's decision on the likelihood of success.").

As set forth in NBME's motion, the district court improperly concluded that Plaintiff is a "disabled individual" by (1) misinterpreting the ADAAA as effectively eliminating a plaintiff's burden of proving a disability, and (2) treating a

diagnosis as a disability. Mot. 18-22. Even accepting as true the court's factual findings (including the clearly erroneous ones),[2] Plaintiff cannot satisfy the standard for a disability under the ADA. That the court held a three-day hearing and wrote a lengthy opinion does not somehow make its legal errors unassailable.

Plaintiff also tries to shield the court's flawed decision from this Court's scrutiny by relying on credibility findings the court never made. Opp. 10. To the extent the court addressed the experts' credibility at all, it was simply to note that both Plaintiff's and NBME's experts "appear eminently qualified." Ex.1 at 44. Contrary to Plaintiff's assertion, the district court never found, based on the testimony and evidence presented, that "Dr. Smith's conclusions are more persuasive than those of NBME's experts." Opp. 10; *see* Ex.1.

Rather, the court—sidestepping any credibility determination—concluded that it was "constrained to follow the

---

[2] For example, the court's finding that NBME and its evaluators accepted Plaintiff's remarkably low scores on certain subtests from the Smith evaluation as credible was clearly erroneous. *See* Mot. 14; Ex.6, at 6-7. Likewise, the court's statement that "no consideration was given [by NBME] to other evidence produced by Plaintiff" (Opp. 13) was clearly erroneous. *See* Ex.4 at 5-8; Ex.5 at 2; Ex. 6 at 3.

provisions of the ADA and the guidance and directives set forth in the implementing regulations." Ex.1 at 44. The court deferred to Plaintiff's expert *not* because it found him more credible, but because it misinterpreted the ADAAA as effectively negating a plaintiff's burden of proving a disability and as compelling deference to professionals who met personally with the plaintiff. *Id*. at 44-46; *see* Mot. 20-23. That was a legal conclusion, not a factual finding, and it was improper. *See* Mot. 20-23.

Plaintiff also misstates that the lower court found she "receive[d] informal accommodations throughout elementary school, middle school and high school." Opp. 10. It did not, and the evidence resoundingly showed otherwise. Mot. 4-7. The court found only that she received limited assistance from elementary school teachers, while acknowledging that "documentary evidence" of her alleged impairments was "indeed sparse" and she "performed exceedingly well overall academically during this time with little help." Ex.1 at 31-32.

Lastly, Plaintiff unpersuasively attempts to distinguish relevant authority from courts in this circuit crediting non-

impaired, "real world" test scores over anomalous scores on self-interested diagnostic evaluations.

Plaintiff argues that *Bibber v. Nat'l Bd. of Osteopathic Med. Exam'rs* is inapposite because Bernadette Bibber's diagnostic testing demonstrated average reading levels. Opp. 16. But Plaintiff omits that Bibber, like her, received various diagnostic scores in the bottom first and sixth percentiles— which ultimately did not carry the day given her far better scores on the GRE and MCAT. 2016 WL 1404157, at *3-4 (E.D. Pa. Apr. 11, 2016); *see also Love v. Law Sch. Admission Council*, 513 F. Supp. 2d 206, 226 n.21 (E.D. Pa. 2007) (concluding that the plaintiff, who did well on the ACT and LSAT, was not disabled, and "giv[ing] little credence to" diagnostic test scores that were "so low that they must be treated as outliers or worse").

Plaintiff also attempts to distinguish *Rawdin v. Am. Bd. of Pediatrics* on the ground that Mr. Rawdin's scores were mostly in the "superior" or "high average" range. Opp. 16-17; 985 F. Supp. 2d 636 (E.D. Pa. 2013), *aff'd*, 582 F. App'x 114 (3d Cir. 2014). But that is the case here, too. Even setting aside that Plaintiff's "real world" grades and standardized

test scores are largely above average (and often exceptional), most of her diagnostic test results are average or better as well. Plaintiff ignores, for example, the finding from her own evaluator, Mr. Livingston, that her "reading comprehension was above average," and Dr. Lewandowksi's finding that her reading was "normal to above normal and consistent with past education." Mot. 10, 12. The outlier scores she relies upon, Opp. 16, include an assessment of "oral reading fluency" (there is no oral reading on Step 1), and diagnostic subtests on which the required reading was far shorter and less complex than what she encountered on the ACT, MCAT, and numerous other standardized tests. *See* Supp. Exs. 4-6. To achieve low scores on those diagnostic subtests, she simply had to read slowly. Ex.3 at 451-53.

Her efforts to distinguish cases from other circuits also fail. *See* Mot. 15-24. She ignores *Healey*, for example, and mischaracterizes *Black* as involving "a belated motion to amend a pleading." Opp. 19. *Black* was a merits decision involving, as here, an extremely accomplished individual for whom a lifetime of objective evidence refuted the reports from her evaluators.

In sum, the district court's conclusion that Plaintiff is disabled is erroneous as a legal matter. NBME is very likely to succeed on the merits of its appeal. *See Doherty v. NBME*, No. 19-30661 (5th Cir. Sept. 3, 2019) (granting stay where district court failed to correctly apply the controlling legal standard under 28 C.F.R. § 36.105(d)(1)(v)).

## II.    Plaintiff ignores the harm to NBME and others.

Plaintiff concedes that the district court did not address the harm to NBME. Opp. 8. That legal error alone warrants a stay. Mot. 24 (quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008)).

Plaintiff argues that "NBME cites no logistical difficulties with compliance" and "[n]o one will be harmed if Ms. Ramsay is successful and able to continue in medical school." Opp. 8. She contends she is just a "single student" taking "a single test." *Id.* at 7. But those assertions miss the mark entirely. The harm here has nothing to do with logistics and everything to do with ensuring fairness to others examinees, preserving the integrity of the USMLE, and protecting the public welfare.

As the Second Circuit recognized, NBME—"[a]s administrator of the national exam used … for licensing medical doctors"—"has a duty to ensure that its examination is fairly administered to all those taking it" and "individuals … without disabilities do not receive accommodations that … could provide them with an unfair advantage when taking the medical licensing examination." *Powell v. NBME*, 364 F.3d 79, 88-89 (2d Cir. 2004).

That duty compels NBME to seek a stay here. Awarding unwarranted extra time to an individual who does not qualify as "disabled" harms NBME, the public, other test-takers, medical schools, and residency programs. Although Plaintiff argues that reporting her score to residency programs is a "non-issue," she also claims she will be harmed because her "score will be considered by hospitals where she would like to do residencies." Opp. 9, 18. Plaintiff cannot have it both ways, and her desire to maximize her score and thereby obtain a residency match in lieu of another student is a concrete harm for other test-takers. *See* Opp. 9.

### III.    Any harm to Plaintiff is neither irreparable nor likely.

Plaintiff asserts that she will be irreparably harmed if she cannot "take and pass" Step 1 by March 2, 2020, "because she will be dismissed from medical school with no opportunity to retake the test at a later time." Opp. 2, 6, 9, 19.

That is untrue in several respects. If Plaintiff tests by March 2—with or without accommodations—she may return to school regardless of whether she passes. Plaintiff's medical school clarified its "expectation that [Plaintiff] would take the USMLE Step 1 and return to the WMed curriculum by March 2, 2020." *See* NBME's Supp. Ex.7. It stressed: "You may return to the curriculum upon *taking* Step 1." *Id.* (emphasis added). If passing were required by that date, the preliminary injunction would do her no good because, even if she tests with accommodations, she will not receive her score by March 2. *See* Mot. 2.

Moreover, Plaintiff's school expressly told her that, instead of testing by March 2, she can withdraw and reapply when she is ready to take Step 1. Mot. 25. It is therefore untrue that she will have "no opportunity to take the test again at a later time" if she does not pass by March 2. Opp. 6.

Plaintiff's complaint that she has been delayed three years is also meritless. Opp. 1, 9. Not only is a delay in education not irreparable harm, Mot. 25, but *Plaintiff* bears much of the responsibility for that delay. She first applied for accommodations in December 2016 and has spent the three years since seeking diagnostic evaluations that might support her numerous reconsideration requests. *See* Mot. 9-15. For example, Plaintiff took ten months to reapply for accommodations after failing Step 1 and made no attempt to retest in the meantime.

Plaintiff's alleged harm is also speculative. She claims this assertion is "truly bizarre," and yet never addresses NBME's arguments on this point. Despite her burden of showing irreparable harm is "*likely*," *Winter*, 555 U.S. at 22, the court never found (and she has not alleged) she would likely fail without double testing time, nor is there evidence she would. Mot. 25.

To the contrary, the mountain of evidence in this case—entirely ignored by Plaintiff—compels the opposite conclusion. She missed passing on her first attempt by one point. Plaintiff says this was "because she could not read all the

questions," Opp. 9, but the evidence showed that insufficient time was not the issue. The hearing evidence showed that, contrary to her assertions prehearing that she was unable to read 30-35 percent of the Step 1 questions, Plaintiff spent time on every one, devoting 20 seconds or less on only four questions, all of which she answered correctly. Mot. 11; *see also* Mot. 10 (describing Plaintiff's testimony that her poor performance on subject-matter exams, which are like the USMLE and which she took with double time, had nothing to do with the amount of testing time she received).

Plaintiff says she has "spent more than a month" preparing for the upcoming test. Opp. 19. She can take that exam with the accommodations NBME did approve, which include a separate testing room and testing over two days instead of one. Mot. 12-13. There has been no showing or even allegation that she would not pass under that scenario.

The speculative nature of Plaintiff's alleged harm from being unable to test with extra time has also played out in similar cases. For example, a court recently granted a preliminary injunction to an examinee who claimed to have a reading disorder that necessitated extra time to pass the

USMLE. After the Fifth Circuit vacated the injunction, the plaintiff tested without accommodations and achieved a score well above passing. *Doherty*, No. 19-11790, ECF No. 49 (Jan. 17, 2010). Similarly, Bernadette Bibber—after being denied extra testing time on her initial medical licensing exam when she sued under the ADA—completed medical school and is currently the chief Family Medical resident at a medical center in New Jersey.[3]

## CONCLUSION

The issues presented in this appeal are important and go beyond one individual taking a single exam. NBME respectfully requests that this Court stay the district court's preliminary injunction.

---

[3] *See* American College of Osteopathic Family Physicians, *Bernadette Bibber*, https://www.acofp.org/acofpimis/Acofporg/Membership/Resident_Council_Bios/Region1_BBibber.aspx.

Respectfully submitted,

Alison R. Caditz, #51530          /s/ Robert A. Burgoyne
PERKINS COIE LLP                  Robert A. Burgoyne, #366757
1201 Third Avenue,                Caroline Mew, #467354
Suite 4900                        PERKINS COIE LLP
Seattle, WA 98101-3099            700 Thirteenth Street N.W.,
Telephone: 206.359.8000           Suite 600
                                  Washington, DC 20005-3960
                                  Telephone: 202.654.1744

                                  *Counsel of Record for Defendant-*
                                  *Appellant*

February 14, 2020

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,596 words, excluding the parts exempted by Rule 27(a)(2)(B). I further certify that the motion complies with the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Century Schoolbook and Palatino Linotype fonts.

/s/ Robert A. Burgoyne
Robert A. Burgoyne

*Counsel of Record for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I certify that on February 14, 2020, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Third Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

/s/ Robert A. Burgoyne
Robert A. Burgoyne

**ELECTRONIC DOCUMENT CERTIFICATE**

I certify that: (1) the electronic submission is an exact copy of the paper document; and (2) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Robert A. Burgoyne
Robert A. Burgoyne

## CERTIFICATE OF BAR ADMISSION

Pursuant to Local Appellate Rule 46.1(e), I certify that I am counsel of record and a member of the bar of the United States Court of Appeals for the Third Circuit.

/s/ Robert A. Burgoyne
Robert A. Burgoyne